***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Chapman, with minor modifications.
 *********** RULING ON DEFENDANTS' MOTION TO DISMISS
The defendants have made motion to dismiss the plaintiff's appeal for plaintiff's failure to file a Form 44 and brief in this matter pursuant to Rule 701 of the Rules of the Industrial Commission. The Full Commission takes notice that plaintiff's Form 44 and brief was not filed with the condition, and plaintiff did not appear at oral argument before the Full Commission.
In its discretion, the Full Commission hereby DENIES defendants' motion to dismiss; however, in light of plaintiff's failure to comply with Rule 701, the Full Commission deems it proper to SANCTION plaintiff as provided herein.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction of the parties and the subject matter.
2. At all times relevant to the claim, an employer-employee relationship existed between the plaintiff and the defendant-employer.
3. Clarendon National Insurance Company is the carrier for the employer.
4. The defendants have denied liability and the plaintiff has not received any disability benefits.
5. At the time of the alleged injury by accident, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
6. On April 5, 2003, the plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant-employer.
7. The parties stipulated into evidence the following:
a. Packet of medical records and statements;
b. Packet of discovery responses; and
c. Packet of Industrial Commission forms.
8. The Pre-Trial Agreement dated August 5, 2004, which was submitted by the parties, is incorporated by reference.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff, who was fifty-one years old at the time of the hearing before the Deputy Commissioner, was employed by the defendant-employer for over fifteen years. As of April 5, 2003, his position was second operator on the take-up machine, which was a textile machine. His duties included doffing the yarn off of the machine, inspecting the thread and yarn, replacing guides on the machine and cleaning the area. He used an air hose to vacuum dust from around the machine.
2. On April 5, 2003, the plaintiff sustained a compensable injury by accident when the air hose he was holding became disconnected from its attachment point over the machine and the upper end of the hose struck him on the head. He testified that the hose flailed around until he turned off the vacuum and that it struck him three times. However, the evidence of record shows that once the hose became loose, there would have been no air pressure going through it and, thus, the hose struck the plaintiff just once as it fell.
3. Following the incident, a co-worker summoned the supervisor, who took the plaintiff to the nurse's station and applied ice to plaintiff's head. The injury occurred on a Saturday, so the nurse was not a nurse present. The next day, a supervisor took the plaintiff to the hospital. The medical report from that examination was not placed into evidence, but the plaintiff was given a work excuse for forty-eight hours.
4. The plaintiff was not scheduled to work on Monday or Tuesday but subsequently returned to work. The plaintiff's testimony was very vague about when he returned to work and no company records were submitted on that issue. Based upon the evidence of record, it appears that the plaintiff had a work excuse for April 7 and 8, 2003, which were scheduled days off work for the plaintiff.
5. The plaintiff subsequently returned to work and was observed to not to have any visible signs of injury. However, at his request, the plaintiff was sent to Rocky Mount Medical Center where he saw Physician Assistant Peter White on April 14, 2003. On that occasion, he complained of headaches and dizziness since being struck by the hose on April 5, 2003. There was no visible sign of injury and the plaintiff's examination was normal, except for complaints of tenderness at the spot where the hose struck him. Because his complaints were consistent with a mild concussion, P.A. White prescribed Voltaren and gave the plaintiff work restrictions for no lifting, bending, or stooping, and no working around machinery. The plaintiff's employer limited his work duties in accordance with the restrictions. The plaintiff returned to P.A. White on April 28 and May 13, 2003, reporting persistent symptoms, and P.A. White recommended that the plaintiff be evaluated by a neurologist.
6. During this time, the defendant-employer was severely affected by a downturn in business for the textile industry and began laying off large numbers of employees. On approximately May 24, 2003, the company laid off the plaintiff, who had continued working up until that date. The Full Commission finds that the plaintiff's layoff was not related to his injury.
7. The plaintiff finally saw a neurologist, Dr. Jeffrey Siegel, on June 20, 2003. Dr. Siegel noted that the plaintiff appeared angry at the outset and appeared to have a bad attitude. The plaintiff complained of persistent but improving symptoms of headaches, dizziness, confusion, and nausea since the accident, and said that he had not been taking any medication. Accepting the complaints as valid, Dr. Siegel diagnosed the plaintiff with mild post-concussive syndrome, recommended that he rest for two weeks, and prescribed Panelor for his headaches.
8. The plaintiff returned to Dr. Siegel on July 18, 2003, stating that he had never gotten the prescription filled and that his symptoms were no better. Since he was not willing to take the medication prescribed, because he appeared well and his neurological examination remained normal, Dr. Siegel released the plaintiff from his care with no restrictions and no permanent impairment.
9. Not being satisfied with Dr. Siegel's findings, the plaintiff then went to Dr. Michael Kushner, another neurologist, on August 26, 2003, and complained of daily headaches since the injury. Dr. Kushner reviewed the CT scan performed at the request of the emergency room physician and found it to be normal. Based upon the plaintiff's complaints, he diagnosed the plaintiff with post-concussion syndrome, prescribed medications, and ordered an EEG, which also proved to be normal. The plaintiff returned to the doctor on October 24, 2003, reporting improvement in his headaches and indicating that he was sleeping better. Dr. Kushner adjusted his medication. The plaintiff returned once more for evaluation on December 19, 2003, with only minor complaints and reported that he had continued to improve.
10. The defendants then sent the plaintiff back to Dr. Siegel, who examined him on February 11, 2004, and reviewed the medical records of Dr. Kushner. When Dr. Siegel questioned the plaintiff regarding his symptoms, the plaintiff at first agreed that he was better, as indicated in Dr. Kushner's reports, but then described having two headaches on a daily basis. The plaintiff was in no apparent distress and admitted that he could be working if he had a job. Dr. Siegel's opinions did not change based upon this examination. It was still Dr. Siegel's impression that the plaintiff had reached maximum medical improvement the previous July with no permanent impairment.
11. As stipulated to by the defendants, the plaintiff did sustain an injury by accident arising out of and in the course of his employment on April 5, 2003, when an air hose struck plaintiff once on the head. However, the plaintiff's allegation that the hose struck him repeatedly while it flailed around is not supported by the evidence of record.
12. The evidence of record shows that the plaintiff was capable of performing his regular duties when he was laid off in May 2003. The fact that he did not work on a full time basis after May 24, 2003, was due to economic conditions which forced the defendants to lay off a large number of employees. The plaintiff reached maximum medical improvement no later than July 18, 2003, and sustained no permanent partial impairment as a result of the injury on April 5, 2003.
13. The plaintiff did return to work on a part-time basis in June 2003 and also began going to school for further training, as permitted by the Employment Security Commission. By choosing to go to school on a full time basis, the plaintiff voluntarily removed himself from the labor market and limited the hours he could work. In addition, when subsequently offered a position with the defendant-employer, he turned down the job.
14. The plaintiff has failed to file a Form 44 and brief in this matter pursuant to Rule 701 of the Rules of the Industrial Commission. In addition, the plaintiff failed to appear for oral argument before the Full Commission. Thus, the Full Commission finds the amount of $100.00 to be a reasonable sanction for the plaintiff's failure to comply with the requirements of Rule 701.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The plaintiff has failed to show that he sustained any temporary total or temporary partial disability as a result of the injury by the accident giving rise to this claim. N.C. Gen. Stat. §§ 97-29 and 97-30;Hilliard v. Apex Cabinet Company, 305 N.C. 593 (1982); Anderson v.Northwestern Motor Company, 233 N.C. 372 (1951); See also 4 Larson's Workers Compensation Law § 84.03.
2. The plaintiff has failed to show that he sustained any permanent partial impairment as a result of this injury by accident. N.C. Gen. Stat. § 97-31.
3. The plaintiff has failed to show that he is entitled to further benefits under the Workers' Compensation Act for the minor head injury he sustained on April 5, 2003. N.C. Gen. Stat. § 97-2 et seq.
4. N.C. Industrial Commission Rule 802 provides that failure to comply with any Rules of the Commission, which includes the timely filing of forms and briefs, may subject the violator to any sanctions outlined in Rule 37 of the N.C. Rules of Civil Procedure. Thus, the plaintiff shall be sanctioned in the amount of $100.00 for failing to file a Form 44 and brief pursuant to Rule 701 of the Rules of the Industrial Commission.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. The plaintiff's claim for additional workers' compensation benefits is hereby DENIED.
2. The plaintiff is hereby SANCTIONED in the amount of $100.00 for failure to comply with Rule 701 of the Rules of the Industrial Commission, pursuant to N.C. Industrial Commission Rule 802, and Rule 37 of the N.C. Rules of Civil Procedure. This sanction shall be taxed as costs to the plaintiff.
3. Each side shall pay its own costs.
This 3rd day of October 2005.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN